IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10CV26-03-MU

| | |
|---|---|
| JOSEPH MICHAEL GRIFFITH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **O R D E R** |
| | ) |
| SIDNEY HARKLEROAD, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court upon Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 filed January 25, 2010 (Doc. Nos. 1); Respondent's Response and Motion for Summary Judgment filed February 8, 2010 (Doc. Nos. 4,5 and 6); Petitioner's Opposition filed February 23, 2010 (Doc. No. 8) and Respondent's Reply filed March 10, 2010 (Doc. No. 10.)

Petitioner has filed the instant federal habeas petition challenging his November 23, 2009 disciplinary convictions for assisting another person with litigation or legal matters and corresponding punishment of fifteen days segregation, 10-days credit time loss and 20 hours of extra duty.[1] The offense date was November 13, 2009. Petitioner appealed his prison

---

[1] This case has been appropriately filed pursuant to 28 U.S.C. § 2254 "[b]ecause an action for restoration of good time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of . . . physical confinement,' and this lies at 'the core of habeas corpus.'" Preiser v. Rodriguez, 411 U.S. 475487 (1973). Moreover, if this Court agreed with Petitioner's claim that there was insufficient evidence to support the hearing officer's determination, such determination would necessarily imply the invalidity of the deprivation of his good time credits thereby making habeas the appropriate vehicle for Petitioner's challenge. Heck v. Humphrey, 512 U.S. 477 (1994).

1

disciplinary conviction and on December 10, 2009 his appeal was denied and the actions taken upheld.

By way of the instant petition, Petitioner argues that: (1) his due process rights were violated when the disciplinary hearing officer denied his request that his accuser be a live witness at the hearing pursuant to DOC policy and he was prevented from offering material evidence in his defense showing he did not write any legal documents; (2) the DOC disciplinary charge of D-16 is unconstitutional because it violates his right of free speech; (3) the DOC wrongfully makes inmates pay to receive a copy of the DOC policy and procedures manual; and (4) there is insufficient evidence to support his prison disciplinary conviction.

## I. Factual Background

The record hearing from Petitioner's November 23, 2009 disciplinary proceedings reads as follows:

> Inmate Griffith plead not guilty to the charge of assisting others with legal matters. Staff Assistant Randy Teague inmate was explained his disciplinary rights and read the summary of evidence. Inmate acknowledged his rights and had signed that he understood his rights on the DC138A Inmate met with staff assistance prior to the hearing and inmate acknowledged that he understood that charges. Assistant Unit Manager L. Paquin reports that on 11/13/09 at approximately 0925 hrs she reviewed a letter which was undeliverable as addressed and returned by the US Postal Service. This letter was written by inmate Joseph Griffith. The letter was read at the hearing along with the investigators report and witness statements. The letter contained several phrases that Inmate Griffith had been assisting others in legal matters and/or litigation. Such as: "Please send a copy of your MAR to my attorney and ask him to forward it for me," I completely re-wrote it (MAR) and guess what? He got a hearing in Dec.?", Please send me your MAR before you file it. I am pretty much caught up. I have a few weeks free now!", and P.S. Please let me help you guarantee your release!"
>
> The statement requested by Inmate on John Green was not obtained by the Investigator due to the fact that Inmate stated he was a private citizen and there

was no know address, nor from Ron Wilson, as he or John Green had knowledge of the letter. Inmate stated he was a private citizen. The statement by Ms. Paquin the person who reported the incident and read the letter then reported it was read. Inmate Griffith had ask for her to be a live witness. When ask what additional information could be provided if she appeared as a live witness the inmate stated that he wanted her at the hearing live as well as police officer so he could have her arrested for reading his mail. The request for both of these witnesses to be present was denied. A written statement was obtained by the investigator and additional information would be duplicative. The police officer is denied as he had no knowledge of the incident. Inmate requested the postmaster which had no knowledge of the incident. The request to appear live is denied based on this fact. Inmate Griffith feels that state and federal law has been violated by reading of his mail. He also feels that mail policy has been violated. Inmate admits to writing the letter and stated that he had held a class regarding litigation at Pasquatank and this was not a problem. He stated that the written word was the only way he could communicate to others regarding legal matters. Inmate states that DOC policy chapter D307(F)(2) and D.0307(E) was violated by staff. It should be noted that there is no (E) or (F) section in D.0307. Based on the investigators report, the evidence presented and the statements by staff. Along with the admission of the inmate that he wrote the letter the DHO has reason to believe that inmate is guilty. Inmate given his appeal rights by the DHO.

(see copy of record of hearing attached as exhibit to Petitioner's Petition)

## II. Analysis

Admittedly, Petitioner has not exhausted state court remedies. Petitioner argues that he has not done so because the state courts will not hear his claims. The State acknowledges that it is not clear whether the state courts would entertain this matter, but urges that this Court deny Petitioner's claims on the merits, which the Court has the power to do, notwithstanding non-exhaustion and respondent's refusal to waive non-exhaustion. See 28 U.S.C. § 2254(b)(2). The undersigned has thoughtfully considered Petitioner's claims and will deny his claims on the merits notwithstanding Petitioner's nonexhaustion.

Taking Petitioner's claims out of order, Petitioner argues that there was insufficient evidence to support his prison disciplinary conviction. The United States Supreme Court has

3

stated that a decision by a disciplinary board to revoke good-time credits passes scrutiny under the Due Process Clause if there is some evidence in the record to support the conclusions. Superintendent, Mass. Correctional Inst. V. Hill, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence to support such a conviction, nor any other standard greater than some evidence applies in this context." Id. at 456 (internal citations omitted). Federal courts will not review the entire record, weigh evidence, or assess witness credibility. Id. at 455-56. A disciplinary board's findings will be disturbed only when unsupported by any evidence or wholly arbitrary and capricious. Id. at 457; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990) (record of prison disciplinary hearing need not establish reliability of confidential informant to meet "some evidence" standard.)

The Court has considered the evidence before the DHO and, as outlined in Superintendent, Mass. Corr. Inst. V. Hill, finds that there was "some evidence" to support the decision of the disciplinary officer. Indeed, the DHO considered (1) the actual letter which Petitioner admitted he wrote ; (2) the statement by Unit Manager Paquin that she reviewed the letter which she believed contained phrases that indicated that Petitioner was assisting others in legal matters and litigation including "Please send a copy of your MAR to my attorney and ask him to forward it to me"; I completely rewrote it (MAR) and guess what" He got a hearing in Dec!"; "Please sent me your MAR before you file it. I am pretty much caught up. I have a few week free now!":; and "P.S. Please let me help you guarantee your release"; and (3) the investigator's report which recommended the charge of D-16 due to Petitioner's statement in the

4

letter that he "re-wrote it (MAR) and guess what? He got a hearing in Dec!"

Petitioner has not established that this Due Process rights were violated or that no evidence existed to support his disciplinary conviction. As such, Petitioner has failed to sufficiently establish a federal habeas claim.

Next, Petitioner argues that his due process rights were violated when the disciplinary hearing officer denied his request that his accuser[2] be a live witness at the hearing pursuant to DOC policy and he was prevented from offering material evidence in his defense showing he did not write any legal documents.

A review of the copy of record of hearing reveals that Petitioner's claim is meritless. Indeed, the record reveals that Petitioner was denied live witnesses because they either had nothing additional to add to the proceedings or because Petitioner stated they were private citizens and could not give a known address for them. Additionally, Petitioner's claim that the witnesses were relevant or material is without merit in light of his admission that he wrote the letter detailing the legal assistance he had given or was giving to others. (See copy of Petitioner's 10/18/09 letter contained in disciplinary package at Ex. 3 to Petitioner's Petition.) Moreover, while it is well established that inmates have right under the Constitution's Due Process Clause when prison actions deprive them of their liberty interests, these rights are

---

[2] From what the Court can gather, it appears from a review of Petitioner's opposition to Respondent's Motion for Summary Judgment, that Petitioner is now arguing that he wanted to confront the actual person in the mail room that opened and read his letter before he or she forwarded the letter to Unit Manager Paquin. This person, to the extent he/ she exists, he argues, violated his rights. First, as stated in this Order, the right to call witnesses at a disciplinary hearing is not unqualified. Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004). Next, this Court cannot conceive how this person's testimony would be material or relevant. Finally, the Court has already concluded that there was "some evidence" to support the hearing officer's determination.

"subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." See Wolff v. McDonnell, 418 U.S. 539, 556 (1973). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit their access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566; see also Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004) (the right to call witnesses and present evidence at prison disciplinary hearing is not unqualified); Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999) (no due process violation where disciplinary committee excluded irrelevant or unnecessary testimony). Finally, it is within prison official's discretion to deny requests to gather evidence or call witnesses and "their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration." Brown, 373 F.3d at 505.

The Court has reviewed the record of Petitioner's disciplinary hearing and is satisfied with the disciplinary hearing officer's decision for refusing Petitioner's request that his accuser be a live witness at his hearing.[3] Furthermore, a review of the disciplinary hearing officer's decision reveals that the hearing officer had Unit Manager Paquin's report of the incident. Therefore, Petitioner's claim that his Due Process rights were violated during his disciplinary hearing when the hearing officer refused to call live witnesses is denied.

Next, Petitioner argues that the DOC disciplinary charge D-16 is unconstitutional because it violates his right of free speech.

---

[3] Indeed, when questioned what evidence Unit Manager Paquin could provide if she appeared as a live witness, Petitioner responded that he wanted her at the hearing along with a police officer so he could have her arrested for reading his mail.

As an incarcerated inmate, Petitioner retains only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). In Shaw v. Murphy, the Supreme Court held that an inmate law clerk had no First Amendment constitutional right to provide legal assistance to other inmates, that would enhance the protections otherwise available to him under Turner v. Safley, 482 U.S. 78 (1987). The Shaw Court remanded to allow the lower courts to determine whether the prison regulation in that case complied with Turner. The Turner test provides that a prison regulation infringing on inmates' federal constitutional rights is valid if the regulation is reasonably related to a legitimate penological interest. Under this standard; (1) there must be a valid and rational connection between the prison regulation and the legitimate and neutral governmental interest put forward to justify the regulation; (2) if the connection between the regulation and the asserted goal is arbitrary or irrational, then the regulation fails, irrespective of whether other factors tilt in its favor; and (3) courts should also consider (I) the existence of alternative means of exercising the right that are available to inmates; (ii) the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally, and (iii) the absence of ready alternative available to the prison for achieving the governmental objectives. Furthermore, Petitioner has the burden to overcome the presumption that prison officials acted within their "broad discretion." Shaw, 532 U.S. at 232.

In this instant case, the DOC prison regulation D-16 prohibiting inmates from assisting other persons with litigation or legal matters, satisfies the Turner test. First, the regulation is reasonably related to a legitimate penological interest, i.e., it assists in maintaining the good order

7

and discipline of the state's prisons. Furthermore, prohibiting inmates from assisting other persons in legal matters is rationally related to the goal of good order and discipline and is neither arbitrary nor irrational. Shaw, 532 U.S. 223, 231. Moreover, when evaluating the reasonableness of North Carolina's prison regulation, this Court must consider the fact that North Carolina provides inmates with alternative means of obtaining legal assistance through Prisoner Legal Services.[4] Additionally, the impact of removing D-16 as a prison regulation would have a negative effect on good order and discipline in the prison system and would remove part of the benefit for providing PLS lawyers to inmates in the first place. In short, Petitioner has not and cannot rebut the presumption that prison officials acted within their "broad discretion" in adopting and enforcing the D-16 prohibition against assisting other persons with litigation or legal matters. See Smith v. Maschner, 899 F.2d 940, 950 (10th Cir. 1990) (noting that Johnson v. Avery, 393 U.S. 483, 490 (1969) permits a prison to "prohibit inmates from giving legal assistance if reasonable alternative available'); see also Couch v. Mathena, 2009 U.S.Dist. Lexis 7535, 6-7 (W.D. Va.) (unpublished) ("As an initial matter, an inmate does not have an independent right to help other prisoners with their legal claims.") aff'd, 2009 U.S. App. Lexis 17396 (4th Cir. 2009) (unpublished).

North Carolina's D-16 prison disciplinary regulation prohibiting inmates from assisting other persons with litigation or legal matters satisfies the Turner test and therefore Petitioner claim that the DOC disciplinary charge D-16 is unconstitutional because it violates his right of

---

[4] The North Carolina Department of Corrections has a contract with N.C. Prisoner Legal Services, Inc., which is administered by Indigent Defense Services, to provide legal representation for prisoners. See N.C.G.S. § 7A-498.3(2a) (2009). Therefore, the state provides inmates with a "reasonable alternative" to legal representation or assistance by fellow inmates.

free speech is denied.

Next, Petitioner argues that "making inmates pay a sum of money to the North Carolina Department of Correction to receive a copy if the DOC policy and procedure manual is wrong." (Petition at 8.) Whether the DOC charges inmates for a copy of the policy and procedures manual is not an appropriate claim in this habeas proceeding.[5] See Prieser v. Rodriguez, 411 U.S. 475 (1973) (habeas corpus relief is appropriate when state prisoner attacks fact or length of confinement, where state prisoner seeks monetary or injunctive relief civil rights action is appropriate). Therefore, this claim is denied and dismissed.

**THEREFORE, IT IS HEREBY ORDERED** that:

(1) Respondent's Motion for Summary Judgment (Document No. 5) is **GRANTED**; and

(2) Petitioner's § 2254 Motion (Document No. 1) is **DENIED** and **DISMISSED.**

(3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

---

[5] According to the Respondent, the DOC provides all inmates, free of charge, with a copy if the Inmate booklet that adequately set forth prison rules and regulations and disciplinary offenses. (See copy at Respondent's Reply, Ex. 2.) However, the DOC Policies and Procedures Manual is a larger book and is not provided free of charge. That book is $28.00.

**SO ORDERED**.

Signed: March 19, 2010

Graham C. Mullen
United States District Judge